FITZ HERBERT HEARD, trustee, plaintiff in error, vs. HENRY SILL and WIFE, defendants in error.

J. H. made the following will: "I give to my son, F. H. Heard, in trust for Nancy Sill, two negroes, Bartley and Nat, with discretionary that if the said Sill relinquishes all claim against my estate for lot No. 30, 2d district, Pike county; which lot was given to him, not sold, and the said Nancy should have living children, but both of these things must occur before the said F. H. Heard is authorized to give up the negroes, Bartley and Nat, to the said Henry Sill. But the said F. H. Heard has a discretionary to give the said Nancy Sill, what he thinks is right, for the use of the negroes, Bartley and Nat, and at such times as she needs it; or in case she becomes a widow, then give her up the negroes, Bartley and Nat. Should the negroes never be given up to her, at her death they are to be equally divided between all of my children." It is admitted that Henry Sill has not relinquished his

claim against the estate of the intestate upon the warranty in the deed to the Pike land, and that Nancy Sill has no children, and a bill is filed to require the defendant, as trustee, to account to Nancy Sill for the hire of the two negroes, it being alleged in the bill that she has need for the fund.

*Held,* That there was equity in the bill; this not being a naked power, the non-execution of which will never be aided by the Courts, but a trust power, in favor of one whose claim is founded upon the meritorious consideration of blood, and that the performance of the trust must not be nominal or illusory, but substantial and beneficial; and further, that the necessity of the *cestui que trust* need not amount to absolute want or indigence.

The case is stated in the opinion of the Court.

Jno. J. Floyd, for plaintiff in error.

Clark & Lamar, *contra.*

*By the Court.*—Lumpkin, J. delivering the opinion.

The complainants in this case filed their bill against the defendant, calling on him to account to them for the hire of two negroes, bequeathed to Nancy Sill by her father, Joseph Heard, under the following clause in his will :

"I give my son, F. H. Heard, in trust for Nancy Sill, two negroes, Bartley and Nat, with a discretionary, that if the said Henry Sill relinquishes all claim againt my estate, for lot of land No. 30, 2d Monroe, now Pike county, which lot was given to him, not sold, and the said Nancy should have living children, but both of these things must occur before the said Fitz Herbert Heard is authorized to give up the negroes, Bartley and Nat, to Henry Sill; but the said Fitz Herbert Heard has a discretionary to give the said Nancy Sill, what he thinks is right, for the use of the negroes, Bartley and Nat; and at such times as she needs it; or in case she becomes a widow, then give her up the negroes, Bartley and Nat. Should the negroes never be given up to her, at her death they are to be divided between all my children."

The bill alleges, that Henry Sill has not relinquished his claim againt the estate of the testator, for lot of land No. 30, 2d district of Pike county. And that Nancy Sill has no chil-

dren. It is filed to require the defendant, as trustee, for Nancy Sill, to account for the hire of the two negroes, and pay over the same to her.

A demurrer was filed on the ground of want of equity in the bill, and the argument in support of the demurrer is, that it is left to the discretion of the trustee to give to the complainant, Nancy Sill, what he thinks is right, for the use of the negroes, and when she actually needs it. And that if her husband has competent means to support her, it was not the intention of the testator that she should be entitled to the hire of the negroes. And that the necessity contemplated by the testator not being alleged in the bill, the complainants have not made out such a case as entitles them to the relief sought.

As our brother Cabaniss presents forcibly and perspicuously the view he took of this question, I deem it but an act of justice to him, to incorporate his opinion entire:

" This, it seems to me, is placing too narrow a construction upon the will, and one which the clause under consideration, upon the face of it, does not authorize.

To say that the complainant is entitled to the hire of the negroes only in case of her absolute need, and in the event of her husband failing to provide competent means for her support, is adding to, and enlarging the terms of the bequest. This cannot be done by the introduction of parol testimony to prove that such was the intention of the testator; *a fortiori*, can it not be assumed to be his intention, and the clause construed accordingly. We must, therefore, arrive at the intention of the testator from the clause as it actually stands, and must so construe it as, if possible, to give every part of it effect.

The testator, then, by the 8th clause of his will, bequeathed to his son, F. H. Heard, in trust for Nancy Sill, two negroes, Bartley and Nat, with a discretionary [power] that if the said Henry Sill relinquishes all claim against his estate for lot No. 30, 2d Monroe now Pike county, and the said Nan-

cy should have living children, upon the concurrence of these two contingencies, he was authorized to give up the negroes to Henry Sill; and if these two contingencies had occurred, an absolute title to the negroes would have vested in Nancy Sill, and through her, in her husband, Henry Sill; and no " discretionary" [power] would have remained to the trustee.    It would have been his duty to deliver up the negroes, as directed in the will; and upon his refusal, a Court of Equity would compel him to do it.   In another event, he was directed by the will to deliver the negroes to complainant, Nancy Sill, that is, upon her becoming a widow; and the meaning of the clause is, if her husband, Henry Sill, should die, and leave her a widow, then the title to the negroes was to vest absolutely in her, and it would then be the duty of the trustee to deliver them to her; but " should the negroes never be given up to her," that is, should the two contingencies first mentioned never occur, and the title, therefore, fail to vest in her, and should it fail to vest in her from the third contingency not occurring, that is, her becoming a widow, then, upon the first two contingencies failing to occur, and the third likewise failing to occur, at her death the negroes were to be divided between all his children.   But in the mean time, between the happening of the contingencies mentioned, and the death of Nancy Sill, the negroes were to remain in the possession of the trustee; and the question arises, and that is the question made by the demurrer, what disposition was made by the testator of the hire of the negroes, and who is entitled to it?   That the testator made a final disposition of the negroes, and their hire, there can be no question.   It has already been shown how he disposed of the negroes, in whom, and upon the happening of what events, the title to the negroes was to vest.  Until the title finally vested in some one, how was the hire disposed of?   The clause under consideration must give the answer.  Neither the negroes nor their hire vested in the trustee as his own absolute

property. The negroes, in a certain event, were to vest in and be divided between all the children of the testator, but not their hire; no such disposition of the hire as that, was made by the testator; it was not to fall back into and become a part of the residuum of the estate of the deceased. Who then is entitled to it? The clause of the will under consideration decides this question. The trustee, Fitz Herbert Heard, "has a discretionary [power] to give the said Nancy Sill, what he thinks is right, for the use of the negroes, Bartley and Nat, and at such times as she needs it." The only discretion left to the trustee is, in estimating what is right for the use of the negroes; and it is the duty of a Court of Equity to see that he does not abuse that discretion, by estimating the hire of the negroes unreasonably low. Nor can he withhold the hire on the ground that the complainant, Nancy Sill, does not need it. She is not to be reduced to absolute want to be entitled to the hire, but it should be appropriated by the trustee for her annual support, and at such times as are usual and customary in such cases. And if the trustee abuses this discretion, by withholding the hire entirely, a Court of Equity will compel him to perform the trust, and to account for the hire.

For these reasons the demurrer is overruled."

There is, to my mind, some embarrassment in arriving at a satisfactory construction of this clause of the testator's will. That he intended to use this legacy as a means of coercion, in compelling his son-in-law to release him from liability upon his warranty in the deed, is clear. That he designed to create a separate estate in his daughter, in this property, may, we think, be fairly inferred from the words of the will.

In this latter object he has failed. Still, as the husband and wife have asked the aid of a Court of Equity, to enforce their claim, it is competent for that Court to lay its hands upon the wife's interest, whatever that may be, and have it secured to her sole and separate use.

Further, my own opinion respecting the will is that while the

trustee was at liberty to deliver the negroes to the son-in-law upon the happening of the two events provided for by the will, still he was not bound to do so. He had a right to retain the possession, by the express terms of the testament. I speak now of the intention of the testator. Suppose the clause under consideration had stopped, without saying any thing as to the use of the negroes. That they had been simply given to the son, in trust for his sister, with power to turn them over to the son-in-law, upon the happening of the two events specified, or upon failure thereof, to the widow, if she survived her husband; and if not, at her death to the other children of the testator. I repeat, had this been the whole will as to this property, who would have been entitled to the usufruct?

It was confidently maintained upon the argument, that the daughter would have no claim to the hire of the negroes. Is this assumption correct? A. gives property to his son, in trust for his married daughter, but to be withheld from the possession of the son-in-law until certain conditions are performed; is the proposition beyond dispute, that the daughter, in the mean time, for whose benefit the trust was created, is excluded from all participation in the profits of the property? It would seem that the very contrary position would be true? And that in reply to the question, does the second clause in this item of the will enlarge the rights of the *cestui que trust*, it might be retorted, does it restrict them?

If it be true that the possession of the slaves might be withheld from Henry Sill, the husband, even though the two contingencies had both occurred, is it to be supposed, that in that case the intention of the testator was to deny to his daughter the income from the negroes? And yet, the clause must be interpreted in that case, in the same way that it would be though no release was made of the warranty, and Nancy Sill be childless.

What then is the discretion vested in Fitz Herbert Heard over this property? Should Henry Sill relinquish all claim

against the testator's estate, for lot of land No. 30, in the 2d district of Pike county, and his wife Nancy have living children, then, and in that case, Fitz Herbert Heard is *authorized* to give up the negroes, Bartley and Nat, to Henry Sill. He is not bound even then to do so, but may continue to hold them in trust. I am speaking now in the language of the will, in the light of the testator's intention. But suppose the foregoing conditions are not performed, or suppose they are, and the trustee sees fit to retain the possession of the negroes, he has the discretion in the second place, to give his sister, Nancy Sill, what he thinks is right, for the use of the negroes, Bartley and Nat, and at such times as she needs it. If she becomes a widow, with or without the relinquishment, with or without children, Bartley and Nat are to be given up to her. If they are never given up for any of the foregoing reasons, at the death of Nancy Sill they are to be divided between all the testator's children.

Was the provision made for the daughter real or illusory? One that the trustee might give or keep back at his pleasure? No one pretends that *he* took any beneficial interest in these negroes. He held a power in trust for somebody else, and the question is, who is the usee? There are but two alternatives, and we are compelled to choose between them. Either the income was to be appropriated to Nancy Sill, or else it was to accumulate in the hands of Fitz Herbert Heard, to be turned over with the *corpus*, to his sister, in case of widowhood, or at her death, to all the children of the testator. Which disposition did the testator intend to make of the hire? There is nothing in the will that looks to accumulation for any body. Besides, the negroes are given to Fitz Herbert Heard, in trust, expressly for Nancy Sill. Does it not appear then that the testator himself has settled this doubt?—has spoken out upon the subject?

It is argued, and there is weight in the suggestion, that give to Sill and wife the hire, and they are content. That by doing this, you counteract the main motive which the tes-

tator had in framing his will as he did, namely, to coerce his son-in-law to make the relinquishment which he exacted of him. But this, at most, is only partially true. The title and possession are kept from him, unless he complies with the conditions.

After all, where lies the justice of the case? I try always to dig deep for that; and when found, nothing but the most imperious legal necessity can restrain me from administering it. The testator proposes to give his daughter two negroes, but saddles the gift with the incumbrance that she must have living children, and her husband must release him from liability upon his warranty to a lot of land, which he asserts he gave and did not sell him. Suppose he did give it, and the title has failed, is the daughter to get that much less than his other children? There is no equality or equity in that.

And although Sill, upon a suit upon the warranty, should recover of the estate the value of the land, he will be no better off than the rest of the children. I do not intend to say, that in such an action, the estate could be made to respond in damages. What would be the measure of damages? Certainly, not the purchase money and interest, if the land was given.

No relinquishment has been made; probably none will be. That may be the fault of Sill. There is no living children. That is his misfortune. The latter miscarriage is sufficient to cut him off from the ownership of this property. He likely waited this event before relinquishing, as without children, the release would have availed him nothing. The merits of the case, therefore, is with the complainants. And if the allegations in the bill are true, I am inclined to the opinion that the law of the case is also with them.

I take the doctrine to be this: That although it be an immutable rule, that the non-execution of a naked power will never be aided, yet, if the power be one which it is the duty

of the party to exercise, he is a trustee for the exercise of the power; and has no discretion, whether he will or will not exercise it. And Chancery adopts the same principle as to trusts, and will not permit the negligence, accident, or other circumstances, to disappoint the interests of those persons for whose benefit he is called to execute it. This principle according to Lord Eldon, pervades all the cases. *Brown vs. Higgs*, 8 *Ves.* 574. This equity jurisdiction, in relieving against the defective execution of powers, is exerted in the case of the meritorious consideration of the person applying for aid—as creditors, *bona fide* purchasers, who rest their claim upon a valuable consideration, and in favor of domestic relatives, whose claims, as appointees, are founded upon the meritorious considerations of marriage or blood.

What is the discretion left to the grantee of the trust power in this case? It is simply that he shall give to his sister, *what he·thinks is right for the use of Bartley and Nat.* Has he done that? By his demurrer to the bill, he admits he has given nothing. It is not left to him to judge whether or not she needs the hire. In case of disagreement between the trustee and *cestui que trust*, that must be determined by the Court. But he must give something, for this is a trust power—a power in which persons other than the grantee of the power are entitled to the benefits resulting from its execution. It becomes an imperative duty upon the grantee, then, to give what he thinks is right for the use of these negroes, to his sister. It does not depend upon his will, whether he will give or refuse. A Court of Equity will compel him to perform the trust for the benefit of his sister. And the performance must be *bona fide*, and not nominal or unsubstantial. Such an execution of the power would be no better than its non-execution, and would be construed to be fraudulent.

I will conclude with this single additional remark: That while the complainants cannot, under this will, insist upon the rule of *strictissimi juris*, as to the amount of hire, so, nei-

ther on the other hand can the defendant shelter himself un-
der that principle, in requiring of the *cestui que trust*, to
make out a case of absolute poverty or penury, before they
are entitled to a decree for compensation for the use which
the trustee has had of the slaves. The testator's views to-
ward his daughter are not so narrow as this. Would the
fund in the hands of the trustee add to her comfort, conven-
ience, or pleasure, in the reasonable sense of that term? If
she needs it for this purpose, she is entitled to it, in contempla-
tion of the will. After all, this expression may mean, only, that
instead of a yearly payment of the hire, which is usual, the
trustee is to advance it from time to time, as she needs it,
which would be the more reasonable and probable, consid-
ering that the trustee himself was expected to retain the pos-
session of the property.

Judgment affirmed.

McDONALD J. concurring.—

I am of opinion that the judgment of the Court below over-
ruling the demurrer filed to the bill in this cause, ought to be
affirmed. The negroes, Bartley and Nat, were given to the
plaintiff in error, in trust for his daughter, Nancy Sill. She
was unquestionable the object of the testator's bounty. The
negroes were not to be delivered to her or her husband, unless
he relinquished to his (testator's) estate, all claim against his
estate for lot of land No. 30, in the 2d district of Monroe, now
Pike county, which the will states had been given, not
sold to him, and unless his daughter should have living chil-
dren, and both these things were to occur before the trustee
was authorized to give up the negroes to the husband.

If the events had occurred, it was still left to the discretion
of the trustee, whether he would deliver the negroes to the
husband. Neither the restraint upon the delivery of the ne-
negroes, nor the discretion given to the trustee in respect to
the delivery of them on the happening of the conditions on

which he might deliver them, affects the bequest to the daughter. The property, so far, is hers; and if retained by the trustee, is to be held for her benefit. The gift to her depends, in no manner, upon his discretion.

The clause of the will proceeds: " But the said Fitz Herbert Heard has a discretionary [right or power] to give to the said Nancy Sill what he thinks right for the negroes, Bartley and Nat, at such time as she needs it." It was obviously the intention of the testator that the negroes should be either held by the trustee, or be delivered to Henry Sill, the husband, on the happening of the contingencies mentioned, and not be hired out. If delivered to the husband, they would have been held for the benefit of the wife; if retained by the trustee, certainly for her benefit, but he to pay what he thinks right as hire, which is equivalent to reasonable hire. The word " discretionary," in this clause, is either synonymous with the words " thinks right," in the same clause, and is mere tautology, or it means he shall have discretion to hire them out, or retain them and pay what he thinks right for the hire. The latter was probably the intention, but, in either event, the daughter was to have the proceeds, whenever she needs them. The word " needs" is not to be construed in its literal sense, for it would then make the bequest conditional, on the hire being necessary to her support, when the bequest is absolutely to her, and the negroes are to be delivered without condition on her surviving her husband. The discretion is not given to the trustee to qualify the legacy, and retain the property to his own use without accounting. Whenever she needed the hire, in her own opinion of her necessities, the trustee had to pay her what he thought was right for the hire, and if he placed an unreasonably low hire upon them, so as to exhibit a selfish discretion, a Court of Chancery would put him right.

BENNING J. dissenting.

The bill of Mr. and Mrs. Sill, asks of Fitz Herbert Heard,

the executor of Joseph Heard, an account of the *hire* of two negroes, Bartley and Nat.

The bill is founded on the following item, in the will of the deceased Joseph Heard: " I give my son, Fitz Herbert Heard, in trust for Nancy Sill, two negroes, Bartley and Nat, with discretionary, that if the said Henry Sill relinquishes all claim against my estate, for lot of land, No. 30, 2d Monroe, now Pike county, which lot was given to him, not sold, and the said Nancy Sill have living children, but both of these things must happen before the said Fitz Herbert Heard is authorized to give up the Negroes Bartley and Nat to Henry Sill, but the said Fitz Herbert Heard has the discretionary, to give the said Nancy Sill, what he thinks is right, for the use of the negroes Bartley and Nat, and, at such times as she may need it, or in case she becomes a widow, then, give her up the negroes, Bartley and Nat; should the negroes never be given up to her, at her death they are to be divided between all my children." I copy from a badly written copy, and there may be some small errors.

Does this item give to Mr. and Mrs. Sill, the right to the *hire* of the two negroes?

I think, that so far as *title*, is concerned, the *hire* stands on the same footing as the corpus, and, consequently, that the hire goes with the corpus, wherever that goes.

A gift of the corpus of property, is a gift of the rent or hire, unless there is something in the conveyance to prevent it from being. This may be assumed.

To whom was the gift of the corpus of the two negroes? In my opinion, to the executor, on certain conditional and successive trusts; namely, to the executor: first, in trust for Henry Sill, on condition that, he should relinquish all claim against the testator's estate, on account of the lot of land, and Mrs. Sill should have a living child by him; secondly, should both these events not happen, then, in trust for Mrs. Sill, on condition that she should become a widow; thirdly, should neither the two things on which, the first condition depend-

ed, nor the one thing on which, the second depended, happen, then, in trust, for "all" of the testator's "children." These conditions are all precedent.

Mr. and Mrs. Sill make no claim to the corpus. I think, then, that I shall be safe in assuming, that no right to the corpus, has vested in them as yet.

The hire, then, went, along with the corpus, (say, to the executor, on these same conditions;) unless there was something in the conveyance (in the item aforesaid,) to prevent it from so doing.

Is there in the item, any thing to prevent the hire from so doing? Nothing, I think. There is I think, nothing in the item to separate the *title* to the hire, from the title to the corpus. There is, it is true, something in the item, to give the executor, perhaps, a *power* over the hire, when there is nothing in it, to give him any power over the corpus; there is, in the item, a grant of "discretionary," [power,] to the executor, "to give the said Nancy Sill, what he thinks is right for the use of the negroes, Bartley and Nat, and, at such times as she may need it;" but, 1st, the grant of a power over a thing, is not a grant of the thing, itself; 2dly, if it were, the grant of this hire would, be to the *executor*, and not to Mr. and Mrs. Sill, for the grant of the power, is to the executor; at least, we may say this much, that, if the grant of this hire would be to Mr. and Mrs. Sill, it would be a grant of it, not absolute, but only on condition, that the executor should think, that she was needing it; and even then, would be a grant of only so much of it, as the executor might think, "right."

There is not, any thing, in the bill, to show, that Mr. and Mrs. Sill has "need" for this hire, or, for any part of it; and if there was, there is nothing in the bill, to show, either that the executor thinks so, or, if he does, how much of the hire it is, which he "thinks" "right" for her.

I say, then, that the hire no more went to Mr. and Mrs. Sill, than did the corpus; but that if it did, it did so, on con-

dition that she had need for it and the executor thought that she had—events neither of which has happened.

Hence, I must further say, that, I think, that the Court below erred in not sustaining the demurrer to the bill. In this I dissent from the Court.