100   379
f102   455

100   379
e103   175

## In Equity.

WILLIAM W. CUTTER et als. *vs.* ALBERT H. BURROUGHS et als.

Cumberland.    Opinion July 6, 1905.

*Equity.    Wills.    Construction.    Imperative Power and Trust.    Guardian Acting as Trustee without Legal Authority.    Equitable Lien.    Subrogation.*

The fourth item of the will of a testatrix, Helen J. Purington, reads as follows:. "I order and direct my executrix herein named to apply all or whatever is necessary of the rents, profits and income of my real and personal estate to the support and education of my daughter, Marie J. Purington, giving her a high school, and if she desires, a seminary or collegiate education, and should the rents, profits and income of my estate, real or personal, prove insufficient for that purpose, I order and direct my executrix to first sell (the real estate situated on the westerly side of Spring Street in said Westbrook) and after the proceeds of the same shall have been applied to the support, clothing and education as aforesaid of my said daughter Marie J. and should they prove insufficient, I order and direct my executrix to next sell (the house and lot situated on Stroudwater Street near the P. & R. Railroad,) and should that also prove insufficient for said purposes I order and direct my executrix to sell (the house and lot situated at the corner of Main and Stroudwater Streets,) being the one in which I now live, and it is my wish and desire and I so order and direct that nothing contained in the second provision herein made shall prevent or in any way interfere in my executrix disposing of the whole of my estate, real, personal and mixed, for the support, clothing and education of my said daughter Marie J. Purington."

The executrix named in said will duly qualified as such but died a little more than a year after such qualification and her account as such executrix was duly settled by her administratrix. After the death of said executrix, one Celina Purington was appointed and qualified as guardian of the aforesaid Marie J. Purington who was then twelve years of age. Said guardian resigned her said trust about a year after her appointment, and thereupon William W. Cutter, one of the plaintiffs, was duly appointed and qualified as guardian of said Marie J. Purington who was then thirteen years of age. Said Marie died on the 17th day of April, 1900, at the age of nineteen years, without leaving issue.

From the time of the death of the aforesaid executrix, no legal representative of the estate of the said Helen J. Purington was appointed until after the death of the said Marie J. Purington.

After said William W. Cutter was appointed guardian of said Marie J. Purington, he proceeded to act under item 4 of the will in precisely the same manner that he would have done had he been appointed as trustee to carry out the provisions of said fourth item. That he had no legal authority to do so, is not denied. But he contended that he did in his capacity as guardian precisely what he should have done had he been appointed trustee to execute the power and trust of item 4; that, in disposing of the income and principal of the estate he faithfully observed the directions of the will, and that the quantity and quality of the estate left in his hands as guardian was exactly as it would have been, had he acted as trustee instead of guardian; that is, so far as the disposal of the estate was concerned, he applied it to the use of Marie, his ward, precisely as her mother directed and commanded it should be used.

After the plaintiff Cutter, acting under the advice of counsel and by authority of Probate Court, had made sales of the real estate named in said item and transacted all the business of the estate, in his capacity as guardian of Marie, it appeared upon a legal investigation and the discovery of a question of sufficient doubt as to the legality of his acts as to require a decision of the law court that the title of the real estate devised did not vest in Marie in fee simple, but was contingent and therefore that all the sales made by Cutter as guardian, were without authority and void. The several plaintiffs, who purchased and paid for this real estate, did services, or expended money for the benefit of Marie under item 4 of the will, then asked to be subrogated to her rights in her mother's estate under said item.

*Held:* 1. That the testatrix by item 4 of her will created an imperative power and trust duty and not a mere naked and discretionary power.

2. That a power coupled with a trust of this kind being imperative must be executed; that the courts will not allow such a trust to fail of execution when by any possible means it can be executed by the court itself; that the court will act retrospectively and in the face of the greatest difficulties to accomplish this object.

3. That this imperative power having failed of a legal execution, the title to the property which should have been applied for the benefit of Marie, passed to the devisee and heirs of the decedent.

4. That the devisees and heirs did not take this property freed from the trust, but received it charged with a resulting trust and equitable lien in favor of the beneficiary.

5. That therefore the plaintiffs who have in effect furnished their money and services in good faith and not as mere volunteers for the support and maintenance of the beneficiary, which support the land was charged with the burden of furnishing, are entitled to be subrogated to the rights of the beneficiary therein and have a lien thereon.

See *Hersey* v. *Purington*, 96 Maine, 166.

In Equity. On report. Bill sustained.

Case remanded for decree in accordance with opinion.

Bill in equity seeking to enforce the execution of an imperative power and trust after the death of the beneficiary, which failed of legal execution for want of a trustee, in behalf of the plaintiffs who have contributed their money and services to furnish the support and maintenance to the daughter of the testatrix, which should have been furnished by the property devised in trust for that purpose under the terms of the will; and to effect such execution of the trust in behalf of the plaintiffs, by subrogating their claim to the rights of the beneficiary in such property, and charging the same with a resulting trust and equitable lien in their favor.

When this cause came on to be heard before the Justice of the first instance, on bill, answer and evidence, it was agreed that the cause should be reported to the Law Court for hearing and decision.

The facts are fully stated in the opinion.

*Robert Treat Whitehouse,* for plaintiffs.

*F. M. Ray, Foster & Hersey, and William M. Ingraham,* for defendants.

SITTING:   WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE,
    PEABODY, SPEAR, JJ.

SPEAR, J.   This is a bill in equity seeking to enforce the execution of an imperative power and trust after the death of the beneficiary, which has failed of legal execution for want of a trustee, in behalf of the plaintiffs who have contributed their money and services to furnish the support and maintenance to the daughter of the testatrix, which should have been furnished by the property devised in trust for that purpose under the terms of the will; and to effect such execution of the trust, in behalf of the plaintiffs by subrogating their claim to the rights of the beneficiary in such property, and charging the same with a resulting trust and equitable lien in their favor. The facts are as follows: On the ninth day of June, 1892, Helen J. Purington of Westbrook died, leaving a will dated November 12th, 1891. Item four of the will is all that it is necessary to quote, as no question is raised as to the devisees and heirs to whom the residue of the estate should go, after discharging the obligations imposed by

the power and trusts commanded by said item. It reads as follows: "I order and direct my executrix herein named to apply all or whatever is necessary of the rents, profits and income of my real and personal estate to the support and education of my daughter, Marie J. Purington, giving her a high school, and if she desires, a seminary or collegiate education, and should the rents, profits and income of my estate, real and personal, prove insufficient for that purpose, I order and direct my executrix to first sell (the real estate situated on the westerly side of Spring St. in said Westbrook) and after the proceeds of the same shall have been applied to the support, clothing and education as aforesaid of my said daughter, Marie J. and should they prove insufficient, I order and direct my executrix to next sell (the house and lot situated on Stroudwater Street near the P. & R. Railroad,) and should that also prove insufficient for said purposes I order and direct my executrix to sell (the house and lot situated at the corner of Main and Stroudwater Streets), being the one in which I now live, and it is my wish and desire and I so order and direct that nothing contained in the second provision herein made shall prevent or in any way interfere in my executrix disposing of the whole of my estate, real, personal and mixed, for the support, clothing and education as aforesaid of my said daughter Marie J. Purington." The will also appointed Dora Purington sole executrix without bond. On the 20th day of September, 1892, the will was proved and Dora Purington was duly qualified as executrix.

Dora Purington entered upon the performance of her duties as executrix, but died on the 6th day of November, 1893. Celina Purington, her mother, was appointed administratrix de bonis non of Dora Purington, on the first Tuesday of March, 1894, and settled the account of Dora Purington as executrix of the estate of Helen J. Purington on the third Tuesday of April, 1894.

On the first Tuesday of April, 1893, Celina Purington was appointed and qualified as guardian of Marie J. Purington, who was then twelve years old, and on the 29th day of the following March, settled her first account, and her resignation was filed and accepted on the fifth day of April, 1894.

On the same day, the plaintiff, William W. Cutter, was duly

appointed and qualified as guardian of the said Marie, now thirteen years of age. Marie died on the 17th day of April, 1900, at the age of nineteen years, without leaving issue. From the time of the death of Dora Purington, executrix of said will, November 6th, 1893, no legal representative of the estate of Helen J. Purington was appointed up to the 17th day of July, 1900, when O. H. Hersey of Portland, was duly appointed administrator, de bonis non with the will annexed, of said Helen J. Purington.

After the plaintiff, William W. Cutter, was appointed guardian of Marie J. Purington, he proceeded to act under item 4 of the will in precisely the same manner that he would have done had he been appointed as trustee to carry out the provisions of said item. That he had no legal authority to do so, is not denied. But it is earnestly contended that, having done through a mistake of his legal duty, just what he could and should have done had he been in the discharge of the duty imposed by the will, he should not now be made to suffer and others to profit. In other words, he contends that he has done in his capacity as guardian, precisely what he should have done had he been appointed trustee to execute the power and trust of item 4; that, in disposing of the income and principal of the estate he faithfully observed the directions of the will, and that the quantity and quality of the estate left in his hand as guardian was exactly as it would have been, had he acted as trustee instead of guardian; that is, so far as the disposal of the estate was concerned, he applied it to the use of Marie, his ward, precisely as her mother directed and commanded it should be used. The undisputed evidence shows that he first used the rents, profits and income of the real and personal estate. The income from these sources being insufficient for the care and maintenance of Marie, he then sold the real estate, situated on the westerly side of Spring Street in Westbrook, as directed in the will. The proceeds of this sale having been consumed, he sold the house and lots on Stroudwater Street, as directed. The funds from these sources still proving insufficient, he finally sold the house at the corner of Main and Stroudwater Streets, on the 19th day of May, 1896.

He sold a portion of the Spring Street property to one of the

plaintiffs, Charles Peterson, for the sum of $625.00, a full and fair value.  He is still in possession of the real estate and has made extensive alterations and repairs.  On the 18th day of May, Mr. Cutter sold the remainder of the Spring Street property to Lillis M. Merrill, for $325.00, also a fair value.  This property, after several mesne conveyances, came into the possession of Samuel C. Holm, also one of the plaintiffs, who still occupies it.

On the 6th day of November, 1899, the plaintiff Cutter, also sold the equity in the property, situated on Stroudwater Street to Stephen F. Hopkinson, for the sum of $650.00, a fair value; and thereafterward, on the same day, took a conveyance of said property for the same consideration to himself.

On the 17th day of April, 1900, the last parcel of real estate, situated at the corner of Maine and Stroudwater Streets, was sold by the plaintiff Cutter, to his own daughter, Elizabeth E. Cutter, one of the plaintiffs, for the sum of $2800.00, which the testimony shows to be a full and fair value for this piece of property.

It should be here observed that the plaintiff, William W. Cutter, consulted counsel reputed to be competent and acted under legal advice with respect to every step he took, and also proceeded in everything he did as guardian under the directions and sanction of the probate court.  Each piece of real estate was duly advertised and all his receipts and expenditures up to March, 1900, were examined and allowed by said court.  After the plaintiff Cutter had made all the above sales of real estate, and transacted all the business of the estate in his capacity as guardian of Marie, it appeared, upon a legal investigation and the discovery of a question of sufficient doubt as to the legality of his acts as to require a decision of the court, that the title of the real estate devised did not vest in Marie in fee simple, but was contingent, and therefore that all the sales made by Cutter, as guardian, were without authority and void.  The several plaintiffs, who have purchased and paid for this real estate, did other services, or expended money for the benefit of Marie under item 4 of the will, now ask to be subrogated to her rights in her mother's estate under said item.  Whether they are entitled to such subrogation depends upon several well defined propositions of law.

I.   Did the testatrix by item 4 of her will create an imperative power and trust duty and not a mere naked and discretionary power?

An examination of this clause reveals in the purpose of the testatrix not only an active power and trust but a peremptory command that all her estate should, above all other interests, be absolutely subject to the benefit and comfort of her daughter.   The mother's deep solicitude for this single purpose is clearly made manifest from the whole tenor of the will.   The language used enjoining the disposal of her estate for the benefit of her daughter was positive and certain, and expressed by the words "I order and direct."   Not only does she command her estate to be thus expended but, that there may be no mistake, negatives any possible construction to the contrary that might be put upon it under item 2 of her will.

It is well settled law that the words contained in this item did not create a mere naked or discretionary power to sell but a power coupled with active trust duties, therefore an imperative power. The legal construction of the words contained in the item has already been determined by this court in the case of *Hersey* v. *Purington*, 96 Maine, 166, in which the court say: "The trust there created is an active trust.   The trustee is to apply all or whatever is necessary of the rents, profits and income, and if need be, the corpus of the estate, to the support and maintenance of the daughter.   This is not a mere naked power.   Active duties are imposed upon the trustee." The court in this case also held "that on the death of the testatrix an equitable fee simple conditional passed to and vested in Marie J. Purington subject to be divested on her dying under 21 years of age, and without issue; which condition was itself subject to the condition that the estate had not already been disposed of for her maintenance and education as provided in the 4th item of the will."   That is in equity this estate vested in Marie subject to partial or complete consumption in the hands of a trustee for her maintenance and education, without the right of any of the beneficiaries under the will, or the heirs of the testatrix, to say nay.

The authorities upon this point are also numerous and uniform. *Ferre* v. *American Board*, 53 Vt. 166, is a case exactly in point. The same words are used in directing the disposal of the estate.

The court say: "The power to sell conferred by the testator or his executors was more than a mere power. No reasonable man can contemplate the language of the will and surroundings of the testator leaving only his widow to be provided for and not become convinced that he intended by conferring the power to provide her a reasonable support if the property should prove sufficient; not depending upon the caprice or the mere discretion of the donees." This case is not only similar in the law but in the facts, to the case at bar. After stating the law the court proceeds with this illustration: "Suppose the widow had been stricken down with a painful, lingering disease, so that she required constant attendance of a nurse and frequent medical attendance, to meet the expense of which the income from the farm was wholly inadequate, and while in this condition and not provided for she had called upon her co-executor to join her in the execution of the power, and sell so much of the farm as would raise money enough to supply her actual necessities, can there be any doubt but that he would, by the language of the will, be under the imperative duty to exercise the power and duty, which he could not disregard in his discretion. The language of the testator is "In such case I ORDER my executors to sell so much of the land as may be necessary for their support while in this life." I think it may safely be held that the testator conferred more than a mere power upon his executors." The language of this assumed case is also apt in its application to the case before us. The daughter Marie, whose future welfare and happiness were undoubtedly the mother's first care in life and her last conscious thought in death, was in fact, "stricken down with a lingering disease," consumption, so that "she required the constant attendance of a nurse and frequent medical attendance to meet the expense of which the income of the property was wholly inadequate." See also, *Williams* v. *Bradley*, 3 Allen, 270. *Hawley* v. *James*, 5 Paige, 318. *Heard* v. *Still*, 26 Ga. 302. Under these decisions it is perfectly clear that a trustee, if one had been appointed to administer the power and trusts imposed by this will, would have been under the imperative obligation as a matter not of discretionary, but of legal duty to have disposed of both the income and the corpus of the estate for the benefit of the daughter in the same

manner as it was disposed of by the plaintiff Cutter acting as guardian. But as a matter of law, after the death of Dora Purington no trustee was appointed, hence there was a total failure of a legal trustee after that event.   Cutter was a de facto but not a de jure trustee.

II.   The second legal proposition which the plaintiffs seek to establish is that a power coupled with a trust of this kind being imperative must be executed; that the courts will not allow such a trust to fail of execution when by any possible means it can be executed by the court itself; that the court will act retrospectively and in the face of the greatest difficulties to accomplish this object. Perry on Trusts, Vol. 1, sect. 248, in speaking of powers which imply a trust, lays down this rule:   "In this class of cases the power is so given that it is considered a trust for the benefit of other parties; and when the form of a gift is such that it can be construed to be a trust, the power becomes imperative, and must be executed.   Courts will not allow a clear trust to fail for want of a trustee; nor will they allow a trust to fail by reason of any act or omission of the trustee;   . . . .   In all cases where parties have an imperative power or discretion given them, and they die in the testator's lifetime, or decline the trust or office or disagree as to the execution of it or do not execute it before their death, or if from any other circumstances the exercise of the power by the party entrusted with it becomes impossible, the court will imply a trust, and will put itself in the place of the trustees, and will exercise the power by the most equitable rule.   And the court will act *retrospectively* in executing these powers as quasi trusts; and although there may be great difficulties and impracticabilities in the way, yet the court will exercise a power and enforce the trust; for if the trust or power can by any possibility be exercised by the court the non execution by the party entrusted shall not prejudice the party interested or the cestui que trust."   In Pom. Eq. Juris., sec. 835, we find this rule:   "Powers in trust," like any other trust are imperative; they create a duty in a trustee, and a right in a beneficiary.   Equity will not suffer this right of the beneficiary to be defeated, either by accident or by design of the trustee and will therefore carry into effect the intention of the donor, and give all needed relief to the beneficiary, wherever there has been a

total or partial failure to execute the power according to the terms of the trust."

In *Attorney Gen.* v. *Downing*, Wilm. 23 Ld. Ch. J. Wilmot, said; " As to the objection that those powers are personal to the trustees and by their death become unexecutable, they are not powers but trusts, and there is a very essential difference between them. Powers are never imperative; they leave the acts to be done at the will of the party to whom they are given. Trusts are always imperative, and are obligatory upon the conscience of the party intrusted. The court supplies the defective execution of powers, but never the non-execution of them; for they are not meant to be optional. But a person who creats a trust means it shall be executed at all events. The individuals named as trustees are only the nominal instruments to execute that intention, and if they fail, either by death, or being under disability, or by refusing to act, the constitution has provided a trustee. Where no trustees are appointed at all, the court assumes the office. There is some personality in every choice of trustees, but this personality is res unius aetatis, and if the trust cannot be executed through the medium which was in the primary view of the testator, it must be executed through the medium which the constitution has substituted in his place."

In *Faulkner* v. *Davis*, 18 Gratt. ( Va. ) 651, two lots were conveyed in trust to be sold provided one Doctor Norton should think it expedient to sell. He died, not having passed upon the question of expediency, not having executed the trust. The court say : "Now it is true that the framers of the trust referred the question of expediency to the opinion of Dr. Norton; and so long as he lived, he was a safe depository of such a trust. But that was a mere means of accomplishing an end; and a court of chancery will not permit the end to be lost because the means marked out have been lost, but will devise other means to accomplish the end. The fact to be ascertained in order to exercise the power is that *it is expedient to make a sale.* And that fact the court of chancery is as competent to ascertain as was Dr. Norton." And the court itself, twenty-five years after the death of Doctor Norton, determined the question of expediency and ordered a sale of the property.

*Mayberly* v. *Turton*, 14 Vesey, 499, is a case in which the trustees had the power to apply a dividend to the maintenance of the children, but had died without ever having applied it and the court examined into what the trustees if there had been any, ought to have done and then did it itself in their stead. This is what was meant by Perry on trusts, supra, when he said the court will act retrospectively. *Wareford* v. *Thompson*, 3 Vt. 513; *Brown* v. *Higgs*, 8 Vesey, 561; *Gibbs* v. *Marsh*, 2 Met. 243.

In *Greenough* v. *Welles*, 10 Cush. 571, the court executed the trust. After finding that the power to sell was a power coupled with a trust and therefore imperative, they then further held "that by the flight and outlawry of the executor, he became civiliter mortuus, and that so much of the demanded premises as descended to the son of H. as heir at law, was held by him still subject to the trusts declared by the testator for the benefit of his daughters, which it was the duty of said son to carry into effect by the sale and conveyance of the estate as provided in the will." And that "in all such cases the law grounds the presumption on the fact that a court of equity would compel the execution of the trust, and, in this respect seems to approximate to the rule in chancery, that what ought to be done, shall be considered as done."

Applying these principles to the case at bar, the doctrine appears to be well established that it is the duty of the court to inquire into the facts as presented by the report of the evidence and determine, (1) whether the power and trust, expressed in item 4 of the decedent's will, were legally executed, and if not, (2) whether they should have been.

Upon these questions of fact there is no room for doubt. The trusts were not legally executed and they emphatically should have been.

(3) This imperative power having failed of a legal execution, the title to the property which should have been applied for the benefit of Marie passed to the devisee and heirs of the decedent.

Dora J. Purington, the executrix and trustee under the will, died within a little more than a year, without having undertaken or executed any of the trust duties. But the trust duties did not pass to the executrix and personal representative of Dora J. Purington, the

trustee, nor to the administrator de bonis non, with the will annexed of the testatrix, Helen J. Purington, nor to the heirs of Dora J. Purington, who held the legal title to the trust property during the trust. *Hersey* v. *Purington*, 96 Maine, 166; because in the first place it was a personal trust and confidence. *Greenough* v. *Welles*, 10 Cush. supra. See also *Knight* v. *Loomis*, 30 Maine, 204, with respect to the relation of the administrator de bonis non to the trust.

The trust duties imposed by the item of the will in question could therefore be legally performed only by some new trustee appointed by the court or by the court itself; but no such trustee, as already observed, has been appointed.

Therefore, the acts of Celina Purington and the plaintiff Cutter, in the de facto execution of the trust duties by virtue of their guardianship were void. Under this state of affairs, upon the death of Marie, the title to the property of the decedent passed as follows; that of the Main Street property to the devisee, the defendant Burroughs, by the terms of the will; *Burroughs* v. *Cutter*, 98 Maine, 178; the title to the remainder of the property, to the heirs of the testatrix, by the lapsing of the residuary legacy to Dora Purington; the legacy to Dora being a contingent remainder and never having become vested in her. The item of the will under which she was made residuary legatee was as follows: "Should my daughter Marie J. die as above stated under twenty-one years of age and without issue, I give, bequeath and devise to Dora Purington, sister of my late husband and her heirs and assigns forever, all the rest, residue and remainder of my estate, real, personal and mixed wherever found and however situated; should it not have to be disposed of for the purposes hereinafter provided."

For definitions of vested and contingent remainders, see *Woodman* v. *Woodman*, 89 Maine, 128; *Russell* v. *Elden*, 15 Maine, 193; *McGreevy* v. *McGrath*, 152 Mass. 24; *Carpenter* v. *Heard*, 14 Pick. 449; *Spear* v. *Fogg*, 87 Maine, 132.

Dora Purington died November, 1893, at which time, Marie was still living and the devise being a contingent one, and the contingency of Marie's death without issue not having happened, had never vested in Dora, consequently as a matter of law, this devise lapsed.

A lapsed residuary devise goes to the heirs of the testatrix, who are the next of kin of equal degree living at the time of her death or their descendants by right of representation. In this case they were, as the undisputed evidence shows, the defendant Thomas W. Jenness; and by descent from Joseph W. Nye, Amilie A. Nye, Sarah P. Way, Ida C. Chadwell and Sarah A. Nye; by descent from Solomon Haskell to Lillian J. Haskell and Adeline Haskell.

(IV) The devisees and heirs did not take this property freed from the trust, but received it charged with a resulting trust and equitable lien in favor of the beneficiary. Lewin on Trusts, Vol. 2, 8th Ed. p. 1117, says: "Thus, if a devisee or settler appoints a trustee, who either dies in the testator's lifetime, or disclaims, or is incapable of taking the estate, or if the trustee otherwise fail, the trust is not thereby defeated, but fastens on the conscience of the person upon whom the legal estate has devolved." "I take it," said Lord Chief Justice Wilmot, "to be a first and fundamental principle in equity, that the trust follows the legal estate wheresoever it goes, except it comes into the hands of a purchaser for valuable consideration without notice."

In *Greenough* v. *Welles*, above cited, it is held: "But it does not follow, in case of the failure to execute the power by the donee so that it is defeated at law, that the heir holds the estate discharged of the trust. On the contrary, it is laid down in Sugden on Powers, 394, and the rule is well supported by numerous authorities that in such case the heir holds the estate in trust only, and if the power becomes extinguished by the death of the person to whom it is given, equity acting upon the trust will compel the heir to join in the sale of the estate for the purposes designated by the testator."

(V) Therefore the plaintiffs who have in effect furnished their money and services in good faith and not as mere volunteers for the support and maintenance of the beneficiary, which support the land was charged with the burden of furnishing, are entitled to be subrogated to the rights of the beneficiary therein and have a lien thereon. The decisions upon this point are numerous. Perhaps the leading case is *Bright* v. *Boyd*, 1 Story, 478, and 2 Story, 607, decided by the Circuit Court of Maine and rests upon the authority of Judge Joseph

Story. This case involved an administrator's sale void for want of compliance with the requirements of the law. Judge Story, after elaborately discussing the authorities, said: "There is still another broad principle of the Roman Law, which is applicable to the present case. It is, that where a bona fide possessor or purchaser of real estate pays money to discharge any existing incumbrance or charge upon the estate, having no notice of any infirmity in his title, he is entitled to be repaid the amount of such payment by the true owner, seeking to recover the estate from him." *Pratt* v. *Thornton,* 28 Maine, 355; *Blodgett* v. *Hitt,* 29 Wis. 169; *Valle's Heirs* v. *Fleming's Heirs,* 29 Mo. 152. In this case the court say: "Nothing could be more unjust, we may repeat, than permit a person to sell a tract of land and take the purchase money and then because the sale happens to be informal and void, to allow him, or, which is the same thing, his heir, to recover back the land and keep the money." *Springs* v. *Harven,* 56 N. C. 96; *Waggener, et als,* v. *Lyles, et als,* 29 Ark. 47; *Jones, Administrator,* v. *French, et als,* 92 Ind. 138; *French* v. *Grenet,* 57 Texas, 273; *Cobb* v. *Dyer,* 69 Maine, 494.

It may be here said with respect to the claim on the part of the defendants that the plaintiffs, in whatever they did by way of furnishing money or rendering services for Marie, acted as mere volunteers, is without support. The facts and circumstances connected with the furnishing of such money and services so clearly prove that the plaintiffs did not act as volunteers that we deem further allusion to this phase of the case unnecessary.

It now remains for us to consider under the law, and the facts as reported in this case, the claim of each plaintiff with respect to his right of subrogation to the interests of Marie J. Purington in the property devised to her under the will of her mother. The evidence shows that Ida M. Chadwell, one of the plaintiffs, furnished her services as nurse in good faith upon the request of the beneficiary and her guardian, and in direct reliance upon the promise of the beneficiary and upon the trust property for her pay, and is, therefore, entitled to be subrogated to the rights of the beneficiary in said property to the amount to which the evidence shows she is justly entitled. No evidence whatever to the contrary having been offered by the

defence, $396.00 and interest thereon from the time of the death of Marie J. Purington, the amount claimed, seems to be reasonable, and we find the plaintiff Chadwell is entitled to judgment for $491.00. While those who would now like the proceeds of this estate and deprive this plaintiff of her just dues stood by and did nothing, she broke up her home to administer to the comfort and happiness of this young girl, as far as her sad fate and fading life would admit of happiness, and remained with her through the last days of her lingering illness.

Therefore, Ida M. Chadwell is entitled to have the above amount due her made a charge and lien upon the trust fund of $1854.16, the amount received from the proceeds of the sale of the Main Street property in excess of the amount expended for the benefit of Marie.

The plaintiffs, Samuel Holm and Charles Peterson, both fall in the same category in their relations to the estate under consideration. Both were purchasers in good faith either directly or indirectly, and in possession of real estate, purchased from the plaintiff Cutter and sold by him upon the covenant that he had good right and lawful authority to sell. They have obtained no title by reason of void judicial sales, although their purchase money was applied in furnishing to the beneficiary the support and maintenance with which the land purchased was charged. That equity will take jurisdiction to enforce the rights of Holm and Peterson in a case like this, is well settled. While these two parties are in possession of their respective estates yet their absolute want of title was decided in *Burroughs* v. *Cutter*, 98 Maine, 178. But the title being settled, it is not necessary to be ousted from possession before equity can be resorted to. "In such cases the court treats "the purchaser as the equitable owner of the land and protects his possession as such against the holder of the legal title by enjoining any interference with the possession until payment is made of the equitable charge." *Weaver* v. *Norwood*, 59 Miss. 672; *Blodgett* v. *Hitt*, 29 Wis. 169; (*Valle's heirs* v. *Fleming's heirs*, 29 Mo. 152.) Again when equity has gained jurisdiction it will settle all questions involved, whether legal or equitable. It will "proceed to decide the whole issue and to

award complete relief, although the rights of the parties are strictly legal." Hence it follows that these two plaintiffs, Holm and Peterson, as bona fide purchasers for value at the void probate sale, are entitled to have their purchase money made a charge upon the trust property in the hands of the heirs. The rule of caveat emptor does not apply to either case. It is held in 15 Amer. & Eng. Encyc. 2 Ed., 64, "that the purchaser is bound to look to the proceedings for sale and see that an order is properly made by a competent court and so far the maxim caveat emptor applies, and if he pays the purchase money in good faith without actual knowledge of defects, the ward will be required to do him equity if he avoids the sale." Under these rules, the plaintiff Holm is entitled to receive from the heirs of the testatrix $325.00, the amount of money which he paid for the real estate of which he is in possession and thereupon execute a deed of said real estate to said heirs; or the heirs, if they do not desire to pay said amount of money and take the deed of said property, should be required to execute and deliver a release of the same to the plaintiff Holm. This same rule would apply to the rights of the plaintiff Peterson, did it not appear that in addition to the purchase money which he paid for the real estate of which he is in possession, he had made valuable improvements. He is therefore, not only entitled to the return of his purchase money if the heirs should elect to take the property from him, but also remuneration for the amount which he has expended in improvements, and a release from the heirs. *Bright* v. *Boyd*, 2 Story, 607; *Pratt* v. *Thornton*, 28 Maine; 355; *Blodgett* v. *Hitt*, 29 Wis. 169; *Valle's heirs* v. *Fleming's heirs*, 29 Mo. 152. See also *Ferre* v. *American Board*, above quoted upon other points, which also seems to be pertinent to the point now in consideration.

If in this instance the heirs should elect to take the property upon the payment to Peterson of his purchase money, then the case will have to be sent to a master to determine the amount to which Peterson is entitled for improvements which he has made upon the place.

The plaintiff Elizabeth E. Cutter whether she be treated as a bona fide purchaser in her own behalf or indirectly for her father, is entitled to subrogation. As already disclosed, she had been evicted

by a writ of entry; *Burroughs* v. *Cutter*, 98 Maine.   It appears from the evidence that William W. Cutter sold the Main St. property to his daughter, Elizabeth E., after having advertised it for several weeks for a consideration $50.00 in excess of what he had ever been offered for it, and which according to the testimony of Mr. Ward, who had recently acted as an assessor, was a good price for the property.   Elizabeth E. had no money with which to purchase this property and the consideration was paid by a joint note of the daughter and Mrs. Cutter, the plaintiff's wife, who had real estate in her own name.   This note was discounted at the bank and the proceeds all but $1800.00 were expended by the plaintiff Cutter in behalf of his ward Marie.   This transaction might seem without any explanation as an attempt on the part of the guardian to obtain this piece of property for his own personal advantage; but the case shows that he had been informed at the time of the sale, that his ward could not survive during the day, and owing some bills for the payment of which he had no money of the estate in his hands, and being ignorant of what he ought to do, he consulted not only his regular counsel, but other counsel known to this court to be eminent, who advised him that he should make sale of this property before the death of his ward.   To comply with this advice he was obliged to sell immediately, and consequently conveyed to his daughter, as he did, in order to obtain possession of ready money rather than for any mercenary purposes. While this transaction was unwise and unfortunate we do not think it was tainted with fraud, and therefore voidable and not void.

The plaintiff, Elizabeth E. Cutter, is the nominal grantee of this property for which she paid $2800.   $945.84 of this amount has already been expended for the benefit of Marie, the beneficiary of this property.   The remaining sum of $1854.16 is still in the hands of the plaintiff, Cutter, unexpended.   The defendant, Burroughs, having evicted the plaintiff, Elizabeth E. Cutter, must be deemed to have accepted the devise to him and to have decided to retain his title, subject, however, to the charges imposed upon the property by the terms of the devise.   The $945.84 was expended, for the benefit of Marie out of the $2800 received by the plaintiff, William W. Cutter, for the sale of this property, in the payment of bills on account of

which it had become necessary to sell this last piece of real estate. Elizabeth E. Cutter is therefore entitled to be subrogated to the rights of the beneficiary in this piece of property and made whole by having the balance of $1363.16 remaining in the hands of William W. Cutter after the payment by him of the amount due the plaintiff, Ida M. Chadwell, returned to her by him, and also by having the sum of $1436.84, being the amount required to make up the balance of the total sum of $2800 paid by her, made a charge and lien upon this particular piece of real estate devised to the defendant, Burroughs.

We think the same rule should apply to the sale of the equity in the Stroudwater property from the plaintiff, Cutter, as guardian to Stephen F. Hopkinson for the sum of $650, and from Hopkinson to himself for the same consideration. This conveyance to Hopkinson and re-conveyance to himself seemed to have been done in good faith by Cutter after advertising the real estate in the newspapers for several weeks for a full and fair value of the property. In all these matters Cutter acted upon the advice of counsel as laymen under similar circumstances are accustomed to act, and there is not the slightest testimony or inference that he did not rely and act in good faith upon the legal advice given. Therefore this transaction does not seem to be so tainted with fraud as to make it void instead of voidable. We think that the plaintiff, Cutter, having in good faith expended the $650 which he paid for this property for the benefit of the beneficiary in this particular property should be subrogated to her rights therein and have a lien upon the property therefor, and that the heirs, if they do not wish to retain this particular piece of property, should be required to make proper releases of the same to said Cutter. We have now disposed of all the property involved in this case.

No evidence having been offered by the defendants with respect to the value of the rents and profits of these various pieces of property to those in possession, or the payment of interest, in case of the election of the heirs to take the property, to the various purchasers upon their purchase money, we have assumed in the conclusion arrived at, that in case the heirs elect to take the property, the rents and profits on the one side and the interest on the other may be about equal and

therefore be offset.    The heirs who elect to take any property herein referred to, must make their election within thirty days from the date of the final decree in this case.

*Case to be remanded for a decree in*
*accordance with this opinion.*