# CHARLESTON.

GEORGE MOATS· *et al. v.* MONTERVILLE POLING *et al.*

(No. C. C. 425)

Submitted January 8, 1930. Decided January 14, 1930.

418

W. *Bruce Talbott* and *Wm. T. George,* for plaintiffs.

*J. Blackburn Ware, Paul B. Ware,* and *D. D. Stemple,* for defendants.

HATCHER, JUDGE:

A demurrer to the bill in this cause was sustained by the circuit court, which on its own motion certified the questions arising thereon to this Court for decision.

The bill sets up the will of Asa Poling which contains the following provisions: "I give, devise and bequeath, to my wife Letta Bennett all my real estate being my home farm as long as she lives and at her death the said farm shall go to Mont Poling, providing the said Mont Poling * * * is to maintain my wife Lettie Bennett by giving her board and clothes and furnishing her with all necessaries of life and giving her a decent burial. * * * I further direct that my wife shall have full control of my real estate as long as she lives." The bill alleges that the Supreme Court has interpreted the will as meaning that the maintenance need not be on the home farm itself and that the maintenance is a lien upon the real estate, (reference is had to the case of *Poling* v. *Bennett,* 103 W. Va. 456); that some time after the death of the testator, Mrs. Bennett elected to live with the plaintiffs who at her request maintained her in reliance on the provisions of the will and in expectation that they would be repaid; that Mrs. Bennett had caused defendant Mont Poling to be served with a written notice stating that she had elected

to reside with plaintiffs and had an arrangement with them to maintain her for $60.00 a month exclusive of wearing apparel, and requesting him to pay the amount then due under that contract; that this amount was not paid; that plaintiffs continued to maintain Mrs. Bennett and during the last two and one-half months of her life additional expenses arose because of her illness and it was necessary for them to charge $100.00 a month; that after her death plaintiff George Moats had a notice served on defendant Poling setting up expenses for her maintenance amounting to $922.00 and demanding payment; that no payment has been made by defendant on this account; and that the personal estate of Mrs. Bennett amounts to only about $100.00. The bill prays that plaintiffs be subrogated to her lien on the real estate for her maintenance; that the amount of the lien be adjudicated; and that the real estate be sold to satisfy the lien.

The demurrer advances the following propositions: both the plaintiffs and defendants are improperly joined as such; in the former suit the Supreme Court fixed the duty upon defendant Poling of maintaining Mrs. Bennett at the home farm only; the intention of the testator as shown by the will was that she should be maintained upon the home farm; the will does not make the support of Mrs. Bennett a lien upon the real estate devised to Poling; he was to furnish the maintenance and it was her duty to receive it from him (if he were willing to furnish it), and if she should receive it elsewhere without his consent he would not be bound; plaintiffs have no right of subrogation; no privity of contract exists between plaintiffs and defendants; the bill does not charge that defendant Poling defaulted in performance of his duty; and there is an adequate remedy at law.

Under the allegations of the bill both of the plaintiffs furnished the maintenance to Mrs. Bennett. They are therefore properly joined. The ultimate object of this suit is not a personal judgment against Poling or his wife, but the sale of the real estate devised to him. Under Code, Chapter 65, section 3, she has no right to be endowed in the land. But, the same section makes the following provision for a wife:

"If a surplus of the proceeds of sale remain after satisfying the said lien of incumbrance or purchase money, she shall be entitled to dower in said surplus, and a court of equity having jurisdiction of the case may make such order as may seem to it proper to secure her right." It is therefore to Mrs. Poling's interest in case the real estate is sold to see that it brings a surplus (if possible), and we are of opinion that she is a proper party to this suit. It would indeed be an anomaly in procedure for the court to enter an order affecting a person's right, as the statute provides, when that person is not before the court. *Holden* v. *Boggess*, 20 W. Va. 62, is overruled in so far as it is inconsistent herewith.

In the case of *Poling* v. *Bennett, supra,* an oral contract by which Mrs. Bennett agreed to give Poling her life estate under the will in consideration of his moving on the home farm, managing it, and supporting her there, was under consideration. The finding of this Court in that case as to Poling's duty to maintain her on the home farm related only to his obligation under the contract, and had no reference to his duty under the will. No construction of the will was sought, and no official determination of his duty thereunder was made. His obligation under the contract does not displace that under the will. The consideration for the former was the life estate, for the latter the remainder. They are two separate and distinct transactions. Poling's duty under the will must therefore be considered without reference to his obligation under the contract.

The will is specific as to the kind of maintenance exacted but not as to the place where it was to be furnished. It does not even require the remainderman to reside on the farm. The condition for which defendants contend might have caused Mrs. Bennett to remain at the home place alone, or under other distressing circumstances. That such a contingency was not contemplated by the testator is shown by the conference on his wife of full control of the real estate. This power included the right to lease it, which, if exercised, might have necessitated her living elsewhere. The unqualified gift of full control over the farm negatives any inference of intention

to confine Mrs. Bennett to the farm or to make residence thereon a condition of her maintenance. The entire will demonstrates that the sole concern of the testator was to secure a comfortable maintenance for his wife—not a mere occupant for his farm. Of course, the will required only such maintenance, whether at home or elsewhere, as was "suitable to the estate, the mode of living and the habits of life" of Mrs. Bennett. 6 R. C. L. p. 872, sec. 259.

While the will does not in express terms make the maintenance a charge upon the real estate, it does condition the devise of the remainder upon that support. In such case, a lien does not have to be expressly reserved. The devise is accepted subject to the obligations as a charge thereon. If he would take the benefit under the will, Poling must also accept its burden. "It is well settled that when a legacy is given and is directed to be paid by the person to whom real estate is devised, such real estate is charged with the payment of the legacy." *Brown* v. *Knapp*, 79 N. Y. 136, 142-3. A gift of maintenance is in the nature of a legacy. See 28 R. C. L. p. 307, sec. 289; *McClure* v. *Cook*, 39 W. Va. 579; *Shobe's Ex.* v. *Carr*, 3 Munf. 10; *Olmstead* v. *Brush*, 27 Conn. 530; *Cutter* v. *Burroughs*, 100 Me. 379; *Steele* v. *Korn*, 137 Wis. 51.

Since it was the duty of Poling to furnish the maintenance described in the will at any reasonable place Mrs. Bennett should elect, it was not necessary that she should obtain his consent to her place of residence.

Under the constantly broadening doctrine of subrogation, it may arise where a third person discharges an obligation, under agreement with the obligee, express or limited, to be substituted to his rights against the obligor. Such an agreement is plead in this case. Privity of contract is not necessary between the third person and the obligor, and the former is entitled to whatever rights the obligee had against the latter. The third person is not considered a volunteer. "Subrogation arises only in those cases where the party claiming it * * * advanced the money under an agreement, express or implied, made either with the debtor or creditor, that he

would be subrogated to the rights and remedies of the creditor.'' *Wilkins* v. *Gibson,* 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204; *Cutter* v. *Burroughs, supra; Mosier's Appeal,* (Penn.) 93 A. S. R. 783; *Yaple* v. *Stephens,* 36 Kans. 680; *Sackett* v. *Stone,* 115 Ga. 466; *Riggin* v. *Hilliard,* 56 Ark. 476 (480); 37 Cyc. 468; 25 R. C. L. 1316; Sheldon on Sub., 2nd Ed., p. 248. See also valuable annotation to *Am. Bond. Co.* v. *Bank,* 99 A. S. R. 476.

The bill charges that notice was twice given defendant Poling to pay the obligation and that he failed to do so. Such failure constituted a default in the performance of his duty.

Under the allegation of the bill, an action at law against the estate of Mrs. Bennett would be practically fruitless. It is therefore proper for plaintiffs to resort to their remedy in equity.

In consideration of the foregoing, the action of the lower court sustaining the demurrer to the bill will be reversed.

*Reversed.*