MAINE SUPREME JUDICIAL COURT                         Reporter of Decisions
Decision:       2025 ME 92
Docket:         Ken-24-400
Argued:         May 8, 2025
Decided:        October 30, 2025

Panel:          STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.[*]

MICHELE H.P. XAMPLAS

v.

PETER XAMPLAS

STANFILL, C.J.

[¶1]  Peter Xamplas is a Greek and Australian citizen.  In the divorce action between the parties, he filed a petition under the Hague Convention on the Civil Aspects of International Child Abduction to return the parties' child to Greece.  The District Court (Augusta, *Daniel Mitchell, J.*) denied his request and Peter[1] appealed.  Peter argues that the court erred when it concluded that Peter failed to commence a proceeding within one year and that Michele H.P. Xamplas met her burden of establishing the well-settled-child defense and therefore denied his petition.  Peter further argues that the court abused its discretion in

---

[*] Although Justice Horton participated in this appeal, he retired before this opinion was certified.

[1] Because the parties share the same last name, we refer to them by their first names.

2

deciding not to return the child to Greece. Although neither party initially addressed the interlocutory nature of the order,[2] we conclude that the trial court's order is reviewable under the collateral order exception to the final judgment rule. We disagree that the court erred or abused its discretion, however, and affirm the order denying Peter's petition to return the child to Greece.

## I. BACKGROUND

[¶2]  We draw the following facts from the court's findings, which are supported by competent evidence in the record. *See Yaman v. Yaman*, 730 F.3d 1, 10 (1st Cir. 2013).

[¶3]  Peter and Michele met in Indonesia and married in Australia in 2018. Peter is a citizen of Greece and Australia; Michele is a citizen of the United States. The couple's child was born in Australia on October 22, 2020, and has an Australian passport. The family lived in Australia until relocating to Greece on December 7, 2021.

[¶4]  In late November 2022, the couple and their child traveled with round-trip tickets from Greece to Maine, where they planned to celebrate

---

[2]  Both parties filed a letter of supplemental authorities on this issue in accordance with our invitation at oral argument.

Christmas and vacation for six or seven weeks. Their accounts differ regarding the state of their relationship at this time: Peter saw the trip as a vacation, and Michele was unsure whether she would return to Greece.

[¶5] On January 4, 2023, the day before the family's return flights to Greece, Peter was unable to locate the child's passport. Upon being confronted by Peter, Michele told him that she and the child would not be returning with him to Greece. The following day, Peter returned to Greece without Michele or the child. Peter knew or should have known as of January 4, 2023, that Michele intended to remain in Maine with the child.

[¶6] Michele and the child lived with Michele's father in Windsor, Maine, from January through September of 2023, when Michele and the child moved to an apartment in Bangor. The child has significant family support in Maine, including from Michele's father and sister. The child has secure immigration status and is entitled to pursue citizenship through Michele.

[¶7] The child began receiving developmental services in early 2023, and she was diagnosed with autism spectrum disorder in November of that year. She is enrolled in a therapeutic program where she receives seven hours of therapy each day to assist her with speech and behavioral development. The child enjoys and looks forward to attending school every day. The court

4

concluded that the child is well settled in her stable environment. Returning the child to Greece would be disruptive of her well-settled life in Maine because she has significant support in Maine, and she does not speak Greek.

[¶8] In June 2023, Michele asked Peter for funds to secure an apartment. As a result, Peter contacted an attorney to begin the process of petitioning under the Hague Convention to have the child returned to Greece. On July 17, 2023, Michele filed in the District Court a complaint for divorce against Peter. On September 25, 2023, Peter filed with the Central Authority of Greece a petition for return of the child. *See* Hague Convention on the Civil Aspects of International Child Abduction art. 6-7, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10,494 (Mar. 26, 1986) [hereinafter cited as "Hague Convention"] ("A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities. . . . Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.").

[¶9] The divorce case was scheduled for a hearing on December 1, 2023, which Peter did not attend. On December 21, 2023, the court issued an order

determining that it had "reason to believe [that the] matters will be contested" because Michele was seeking (1) dissolution of the marriage, (2) division of the couple's property including real estate in Greece, and (3) determination of parental rights and responsibilities.

[¶10]  After retaining Maine counsel, on April 19, 2024, Peter filed in the divorce case a motion to dismiss the complaint and a petition under the Hague Convention for return of the child to Greece.  Michele opposed Peter's motion and petition.  The court held a two-day hearing on the petition on May 31 and June 20, 2024.  On June 25, 2024, the court issued an interim order, allocating to Michele the right to enroll the child in a therapeutic program in Maine pending the outcome of all legal proceedings.

[¶11]  On August 15, 2024, the court issued an order denying Peter's petition to return the child to Greece.  Although the court found that Michele wrongfully retained the child beginning on January 4, 2023, the court also found that Peter waited over a year before filing a petition to return the child and that Michele met her burden of establishing that the child is well settled in Maine.  The court therefore exercised its discretion and determined that the child should not be returned to Greece.  Peter timely appealed, *see* M.R. App. P.

6

2B(c)(1), and on September 18, 2024, the court issued an order staying the divorce proceedings pending the outcome of this appeal, *see* M.R. App. P. 3(c).

## II. DISCUSSION

### A. Final Judgment Rule

[¶12]  Because we generally do not hear interlocutory appeals, we first determine whether the appealed-from order constitutes a final judgment and, if not, whether it falls within an exception to the final judgment rule.  *Bond v. Bond*, 2011 ME 105, ¶ 5, 30 A.3d 816.

[¶13]  The United States and Greece are both contracting parties to the Hague Convention, which governs the procedure for determining whether wrongfully removed or retained children[3] should be returned to their country of habitual residence.  *See* Hague Convention; U.S. Dept. of State, *U.S. Hague Convention Treaty Partners*, https://travel.state.gov/content/travel/en/ International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited Oct. 10, 2025) [https://perma.cc/Z8YG-P2BV]. The United States incorporated key parts of the Hague Convention into

---

[3] The term "wrongfully removed or retained" includes the "removal or retention of a child before the entry of a custody order regarding that child."  22 U.S.C.A. § 9003(f)(2) (Westlaw through Pub. L. No. 119-36).

implementing legislation known as the International Child Abduction Remedies Act (ICARA), 22 U.S.C.A §§ 9001-9011 (Westlaw through Pub. L. No. 119-36).

[¶14]  The Convention aims to (1) "secure the prompt return of children wrongfully removed to or retained in any Contracting State" and (2) "ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States."  Hague Convention, art. 1. When a child is wrongfully retained in a country other than the child's country of habitual residence, the Convention "generally requires [the] country [in which the child is wrongfully retained] to return the child immediately if the other parent requests return within one year."  *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4 (2014); Hague Convention, art. 3, 12; *see* 22 U.S.C.A. § 9001(a)(4) ("Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies.").  For petitions filed more than one year after the child's removal, the court "shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment." Hague Convention, art. 12.

[¶15]  This case began when Michele filed a divorce complaint against Peter.  Peter petitioned pursuant to ICARA and the Hague Convention for the

return of the child to Greece not as an independent action but as a request in the pending divorce action. *See* 22 U.S.C.A. § 9003(b). There is no final divorce judgment.

[¶16] "The long-standing final judgment rule requires that, with limited exceptions, a party may not appeal a decision until a final judgment has been rendered in the case. A final judgment is a decision that fully decides and disposes of the entire matter pending before the court[,] leaving no questions for the future consideration and judgment of the court." *Safety Ins. Grp. v. Dawson*, 2015 ME 64, ¶ 6, 116 A.3d 948 (alteration, citation, and quotation marks omitted). "Accordingly, an interlocutory order that does not resolve all pending claims as to all of the parties in an action is not a final judgment for purposes of the rule." *Est. of Dore v. Dore*, 2009 ME 21, ¶ 11, 965 A.2d 862.

[¶17] Because the order appealed from is not a final judgment, we must determine whether any exceptions to the final judgment rule justify our review. *See Bond*, 2011 ME 105, ¶ 6, 30 A.3d 816.

[¶18] We have recognized a collateral-order exception when "(1) the decision is a final determination of a claim separable from the gravamen of the litigation; (2) it presents a major unsettled question of law; and (3) it would

result in irreparable loss of the rights claimed, absent immediate review." *Id.* ¶ 11 (quotation marks omitted).

[¶19] We conclude that the collateral-order exception justifies our review of this interlocutory appeal for the following reasons. First, the Hague Convention claim is separable from the issues to be adjudicated in the divorce action. *Cf. U.S. Dep't of Agric., Rural Hous. Serv. v. Carter*, 2002 ME 103, ¶ 9, 799 A.2d 1232. The Hague Convention claim is fundamentally about jurisdiction: whether a court in Maine or Greece should hear the custody matter, *see Lozano*, 572 U.S. at 5. It is preliminary to and separate from the determination of parental rights and responsibilities under 19-A M.R.S. § 1653 (2025).[4] There is no meaningful overlap between the Hague Convention claim and the other divorce and property issues. *Compare* Hague Convention, art. 3, 12, *with* 19-A M.R.S. §§ 902, 953 (2025).

[¶20] This conclusion is bolstered by the language of the Convention and ICARA. Petitions for the return of children can be, and frequently are, brought as independent actions, separate from any divorce or custody proceeding; in such cases the order on the petition is a final judgment disposing of all claims.

---

[4] "A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue." Hague Convention, art. 19.

*See* 22 U.S.C.A. § 9003(b) ("Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed."); *see, e.g., Lozano*, 572 U.S. at 8. That the petition may be filed as an independent action strongly suggests the issue is collateral to the other issues in the divorce action.

[¶21] Second, this appeal presents a question of law that, although not novel, is unsettled in Maine. We have not previously had the opportunity to interpret the relevant provisions of the Hague Convention as to what constitutes commencement of a proceeding for return of a child, and our lack of precedent supports reaching the merits.

[¶22] Finally, absent our immediate review, Peter could irreparably lose his claimed rights under the Hague Convention. If successful on any of the issues on appeal, Peter would be entitled to have the child immediately returned to Greece for a custody determination to take place there, rather than in Maine. *See* Hague Convention, art. 12; *Lozano*, 572 U.S. at 4-5. Awaiting a

final judgment in this case would inherently and substantially delay the return of the child to Greece and thus infringe on Peter's rights under the Hague Convention.  *See* Hague Convention, art. 1, 12.

[¶23]  Accordingly, we conclude that the collateral order exception to the final judgment rule justifies reaching the merits of this interlocutory appeal.

**B.      Denial of Petition to Return the Child**

[¶24]  The parent petitioning for return of a child bears the initial burden of establishing, by a preponderance of the evidence, that the child was "wrongfully removed or retained within the meaning of the Convention." 22 U.S.C.A. § 9003(e)(1)(A).  If a child has been wrongfully retained, the court must order the return of the child if "at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention."  Hague Convention, art. 12.  As relevant here, when proceedings are commenced more than one year after the wrongful detention, the court shall nonetheless order the return of the child "unless it is demonstrated that the child is now settled in its new environment."  *Id.*  The parent opposing the petition has the burden to establish by a preponderance of

the evidence the well-settled-child defense. *See* 22 U.S.C.A § 9003(e)(2)(B).[5] Even when a court finds that the well-settled-child defense has been established, the court still has the discretion to order the return of the child. Hague Convention, art. 12; *see Yaman*, 730 F.3d at 16.

### 1.    One-Year Commencement Period

[¶25]  Peter contends that the court erred in finding that he waited more than a year to petition for the return of the child and, therefore, the court was required to order the return of the child to Greece without consideration of the well-settled-child defense.  He asserts that the court erred in finding that the child was wrongfully retained on January 4, 2023, instead of July 17, 2023, when Michele filed for divorce, and therefore a year had not passed before commencement of the proceeding to return the child.  He further argues that even if the child was wrongfully retained on January 4, 2023, he commenced the proceedings within one year because he filed a petition for return of the child on September 25, 2023, with the Central Authority of Greece.

---

[5] Although ICARA refers to this as an exception, 22 U.S.C.A. § 9003(e)(2)(B), courts generally have referred to it as a defense and we continue this practice.

### a. Date of Wrongful Retention

[¶26] "A wrongful retention occurs when a parent exercising lawful custody rights authorizes the child's transfer to another country, but then the child is retained in that country in breach of the parent's custody rights." *In re S.L.*, 503 P.3d 244, 258 (Kan. Ct. App. 2021); *see* Hague Convention, art. 3 ("The removal or the retention of the child is to be considered wrongful where . . . it is in breach of rights of custody attributed to a person, . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and . . . at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."); *see also Abbott v. Abbott*, 560 U.S. 1, 8-9 (2010); *Swett v. Bowe*, 733 F. Supp. 3d 225, 274-75 (S.D.N.Y.), *aff'd sub nom. Urquieta v. Bowe*, 120 F.4th 335 (2d Cir. 2024). "To establish a *prima facie* case of wrongful retention under the Hague Convention and ICARA, a petitioner must show by a preponderance of the evidence that: (1) the habitual residence of the child immediately before the date of the alleged wrongful retention was in a foreign country; (2) the retention is in breach of custody rights under the foreign country's law; and (3) the petitioner

14

was exercising custody rights at the time of the alleged wrongful retention." *Id.* at 263 (quotation marks omitted).

[¶27]   We review the court's factual findings, including the date of wrongful retention of the child, for clear error. *See Yaman*, 730 F.3d at 10. We "will affirm those findings as long as they are supported by competent evidence in the record, even if the evidence might support alternative findings of fact." *Bergin v. Bergin*, 2019 ME 133, ¶ 12, 214 A.3d 1071 (quotation marks omitted).

[¶28] When a petitioner originally consents to a child's travel with a fixed return date, retention may be considered wrongful as of the date on which the child ought to have returned. *Swett*, 733 F. Supp. 3d at 274-75. Here, the court did not clearly err in finding that the child was wrongfully retained beginning January 4, 2023. The parties came to the United States with a fixed return date. There is competent record evidence that Michele communicated to Peter her plan to leave him, that she told him on January 4, 2023, that she did not intend to return with him or permit the child to return to Greece, that she did in fact stay in Maine with their child, and that Peter knew or should have known in January 2023 that Michele intended to remain in Maine. Despite Peter's contention to the contrary, the record supports the court's finding that the child

was wrongfully retained as of January 2023, before Michele filed her divorce complaint in July 2023.

### b.     Date of Commencement of Proceeding

[¶29]  Peter also argues that even if wrongful retention of the child began in January 2023, he nonetheless commenced a proceeding for return of the child within one year, necessitating that the child be returned.  We review de novo whether Peter's September 25, 2023, filing with the Central Authority of Greece commenced the proceedings under the Convention.  *See Yaman*, 730 F.3d at 10.

[¶30]  ICARA provides that "the term 'commencement of proceedings,' as used in article 12 of the Convention, means, with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section." 22 U.S.C.A. § 9003(f)(3).  Subsection (b) provides that "[a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and *which is authorized to exercise its jurisdiction in*

*the place where the child is located at the time the petition is filed.*" *Id.* § 9003(b) (emphasis added).

[¶31]  Accordingly, courts have consistently held that to commence proceedings under the Hague Convention, a petition must be filed in a court where the child is located and not in the Central Authority of the country of habitual residence.  *See, e.g.*, *Monzon v. De La Roca*, 910 F.3d 92, 98-99 (3d Cir. 2018); *da Costa v. de Lima*, No. 22-cv-10543, 2023 WL 4049378, at *7 (D. Mass. June 6, 2023), *aff'd*, 94 F.4th 174 (1st Cir. 2024); *de Jesus Joya Rubio v. Alvarez*, 526 F. Supp. 3d 1186, 1203 (S.D. Fla. 2021).  Because the child was in the United States and not Greece, Peter did not commence the proceedings until he filed his petition in a Maine court on April 19, 2024.

[¶32]  We therefore discern no error in the court's conclusion that the child was wrongfully retained as of January 2023 and that Peter commenced proceedings under the Convention on April 19, 2024, more than a year later.

### 2.    Well-Settled-Child Defense

[¶33]  Peter next argues that the court erred in concluding that the child is settled in Maine.  Michele bore the burden to establish the well-settled-child defense.  22 U.S.C.A. § 9003(e)(2)(B).  We review the court's finding that the

child is well settled in her new environment for clear error.  *See Yaman*, 730 F.3d at 10; *da Silva v. de Aredes*, 953 F.3d 67, 72 (1st Cir. 2020).

[¶34]  "The 'well-settled' defense grew out of the understanding of the framers of the Convention that there could come a point at which a child would become so settled in a new environment that repatriation might not be in its best interest."  *Swett*, 733 F. Supp. 3d at 273-74 (quotation marks omitted). "Courts look to the totality of the circumstances in determining whether a child is now settled." *da Silva*, 953 F.3d at 75.  When analyzing whether a child is well settled, courts often consider the stability of a child's living arrangements, the child and family's support network including family and friends, participation in community activities, the parent's employment and financial stability, the consistency with which the child attends school or daycare, the age of the child, and the stability of the child's immigration status.  *See, e.g.*, *id.*; *Alcala v. Hernandez*, 826 F.3d 161, 174 (4th Cir. 2016); *Rodriguez v. Noriega*, 732 F. Supp. 3d 990, 1001 (D. Minn. 2024); *Swett*, 733 F. Supp. 3d at 280.

[¶35]  We conclude that the court did not err in determining that Michele met her burden of establishing the well-settled-child defense.  The court's factual findings are supported by competent evidence in the record, including Michele's testimony explaining the stability of her and the child's living

environment, the support they have from her father and sister who live nearby, her current employment and plan to work as a teacher, the extensive services the child receives to support her in her development and behavior challenges due to her autism spectrum disorder, and the child's enthusiasm for going to school. The court further considered the young age of the child—which the court weighed against finding her settled. The court appropriately applied its findings to the well-settled-child defense, and we affirm its determination that Michele established the defense.

### 3. Decision to Not Return Child to Greece

[¶36] Finally, Peter argues that the court erred in declining to use its discretion to return the child to Greece. We review for abuse of discretion a court's decision to not return a child after finding that a defense applies. *See Yaman*, 730 F.3d at 10.

[¶37] As noted above, even upon the successful showing of the well-settled-child defense, the court retains discretion to order the return of the child. Hague Convention, art. 12; *da Costa v. de Lima*, 94 F.4th 174, 180 (1st Cir. 2024). The First Circuit has termed this determination "a matter of equitable discretion." *da Costa*, 94 F.4th at 180 (quotation marks omitted). "Given the elasticity of that term, a court may consider the abducting parent's misconduct,

together with any other relevant circumstances, such as whether return would not be harmful or disruptive even though the child has become settled, in deciding whether to order [the child's] return." *Id.* (quotation marks omitted).

[¶38] The court engaged in a thoughtful analysis, weighing appropriate facts, including Michele's conduct, the disruption in the child's life should the court order her return to Greece, the importance of the child's maintaining a relationship with her father, and the policies underlying the Convention. The court concluded that "[t]o remove her now from the place where she has important supports to a country whose language she does not speak would strike the wrong balance, notwithstanding the countervailing considerations." We discern no abuse of discretion in the court's decision to not return the child to Greece, and accordingly we affirm the court's order denying Peter's petition.

The entry is:

Judgment affirmed.

---

Dana R. Prescott, Esq. (orally), Prescott Jamieson Murphy Law Group, LLC, Saco, for appellant Peter Xamplas

Jed Davis, Esq., and Jennifer S. Sparda, Esq. (orally), Jim Mitchell and Jed Davis, P.A., Augusta, for appellee Michele H.P. Xamplas