MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2026 ME 51
Docket:       Wal-25-248
Argued:       December 11, 2025
Decided:      May 28, 2026

Panel:        STANFILL, C.J., and CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

MITCHELL D. BROWN

v.

DIAHANNE L. MORSE et al.

STANFILL, C.J.

[¶1]   Mitchell D. Brown's amended complaint asserts seven counts against Diahanne L. Morse, both in her personal capacity and as the representative of the Estate of Tina J. Bowden, relating to the management of the Cecil N. Armstrong, Jr. Living Trust, a trust settled by Brown's and Bowden's late stepfather.  Morse appeals from an order of the Superior Court (Waldo County, *Billings, J.*) that (1) granted Brown's motion to voluntarily dismiss several of the claims in the amended complaint, (2) denied Morse's motion to dismiss the complaint for lack of subject-matter jurisdiction, (3) dismissed Morse's counterclaims as moot, and (4) concluded that "[t]he partial summary judgment previously entered by this court is now a final judgment in this matter in favor of [Brown] against [Morse]."  Because the court's order did not resolve

2

all of the claims in Brown's amended complaint, it is not a final judgment. We therefore dismiss Morse's appeal as interlocutory.

## I. BACKGROUND

[¶2] In January 2021, Brown filed a four-count complaint against Morse, as the representative of Bowden's estate, alleging that when Bowden was alive and acting as trustee, she had breached fiduciary duties, engaged in self-dealing, and invalidly amended the trust instrument to appoint Morse as the successor trustee.[1] Brown requested damages, declaratory and injunctive relief to void Bowden's appointment of Morse, and the appointment of an independent successor trustee. In her answer to the complaint, Morse denied the substance of Brown's allegations, raised a series of affirmative defenses, and asserted counterclaims, ostensibly on behalf of the trust, for tortious interference with a contract and slander of title regarding real estate owned by the trust.

[¶3] In April 2021, Brown moved to amend the complaint to add counts against Morse individually, alleging fraud (Count 5) and negligence (Count 6) related to her service as trustee, and to request a declaration naming Brown as the proper trustee (Count 7). In April 2022, before the court ruled on the motion to amend, Brown moved for partial summary judgment, requesting a

---

[1] Brown pleaded claims of breach of trust (Count 1), tortious interference with an expectancy of inheritance (Count 2), undue influence (Count 3), and improvident transfer of title (Count 4).

declaration by the court that "Brown is the nominated [t]rustee of the [trust]" and that "Morse is not, and has never been[,] the trustee." Brown did not tie anything in the motion to any specific counts in the complaint.

[¶4] After an additional delay in the proceedings, the court held a hearing on May 1, 2023, to address the pending motions. Later that month, the court granted Brown's motion to amend, and in June, Morse filed an answer to the amended complaint that restated her counterclaims.

[¶5] As a result of the pleadings summarized above, there were seven counts in the complaint and two counterclaim counts pending as of June 2023.

[¶6] On December 21, 2023, the court entered an order granting partial summary judgment for Brown. Specifically, the court declared

that Mitchell D. Brown is the nominated [t]rustee of the [trust], and

[t]hat the document entitled First Amendment to the [trust] is void ab initio, and that any actions taken in reliance upon the document have been taken without the authority to act on behalf of the [t]rust, and

[t]hat Diahanne L. Morse is not, and has never been[,] the trustee of the [trust].

Morse filed a variety of post-order motions, each of which the court denied. She also appealed from the court's partial summary judgment order, but we dismissed her appeal as interlocutory. Brown then moved for sanctions

4

pursuant to M.R. Civ. P. 11(a)(6), asserting that Morse's post-order motions were frivolous and filed only to cause delay. The court denied Brown's motion.

[¶7] On January 22, 2025, Brown moved to voluntarily dismiss "Count II, Count III, Count IV, and that portion of Count I that claims a breach of fiduciary duty by the Defendant without prejudice." In response, Morse argued that dismissal should be with prejudice rather than without. Morse also moved to dismiss the complaint for lack of subject-matter jurisdiction, arguing that this dispute lies within the exclusive jurisdiction of the Probate Court.

[¶8] On April 29, 2025, the court entered an order purporting to constitute its "final judgment in this matter." In the order, the court granted Brown's motion to dismiss Counts 2, 3, and 4 and part of Count 1 without prejudice, and it denied Morse's motion to dismiss the complaint for lack of subject-matter jurisdiction. It then attempted to resolve all of the remaining claims in one fell swoop:

> The partial summary judgment previously granted by this court makes [Morse's] counterclaims MOOT. With [Brown's] other claims now having been dismissed, there are no remaining issues before this court to be adjudicated. The partial summary judgment previously entered by this court is now a final judgment in this matter in favor of [Brown] against [Morse]. [Brown] is granted his costs.

> Any pending motions not previously addressed by this court are deemed moot.

The court's order did not mention Counts 5, 6, or 7 of Brown's amended complaint. On May 19, 2025, Morse filed a notice of appeal. *See* 14 M.R.S. § 1851 (2026); M.R. App. P. 2B(c)(1).

[¶9] On July 17, 2025, Brown filed a motion in this Court seeking, among other things, to sanction Morse and her attorney for various forms of alleged misconduct. *See* M.R. Civ. P. 11(a)(6); M.R. App. P. 13(f). We informed the parties that we would consider the request for sanctions along with the merits of the appeal.

[¶10] Before we held oral argument in this matter, we noted that the trial court's "final judgment in this matter" did not appear to have disposed of Counts 5 and 6 of the amended complaint. Accordingly, we directed the parties to "be prepared to address at oral argument whether Morse's appeal is interlocutory and, if it is, whether any exception to the final judgment rule applies." *See, e.g.*, *Bank of N.Y. v. Richardson*, 2011 ME 38, ¶ 7, 15 A.3d 756 ("Whether or not a party has argued the issue, we consider sua sponte whether a matter is properly before us on appeal from a final judgment."). We now dismiss the appeal as interlocutory.

## II. DISCUSSION

[¶11] Brown and Morse assert that the court's April 29 order constituted a final judgment. In the alternative, they urge us to reach the merits of Morse's appeal under an exception to the final judgment rule. We conclude that the order was not a final judgment and that none of the exceptions apply.

[¶12] "The long-standing final judgment rule requires that, with limited exceptions, a party may not appeal a decision until a final judgment has been rendered in the case." *Xamplas v. Xamplas*, 2025 ME 92, ¶ 16, 347 A.3d 1000 (quotation marks omitted). A court order constitutes a final judgment only if it "fully decides and disposes of the entire matter pending before the court, leaving no questions for the future consideration and judgment of the court." *Id.* (alteration and quotation marks omitted); *see* M.R. Civ. P. 54(b)(1). Accordingly, an order that "does not adjudicate all of the claims of all of the parties does not terminate the action as to any of the claims or parties, is not a final judgment, and is generally not appealable." *O'Connor v. Counseling Servs., Inc.*, 2008 ME 114, ¶ 3, 951 A.2d 78 (quotation marks omitted); *see also* Alexander, *Maine Appellate Practice* § 303 at 218 (6th ed. 2022) ("The most common basis for dismissal of appeals under the final judgment rule is a failure to resolve all pending claims, including counterclaims.").

[¶13] Morse asserts that the court's April 29 order amounted to a final judgment because the court intended the order to be a final judgment, the order described itself as such, and the court subsequently marked the case "closed" on the docket.[2] We disagree. Whether an order constitutes a "final judgment" depends not on the court's intent or the label the court uses to describe the order, but on whether the order actually resolves all of the outstanding claims. *See, e.g.*, *Est. of Dore v. Dore*, 2009 ME 21, ¶ 12, 965 A.2d 862 ("A necessary step in the analysis of any final judgment is to look beyond the notation on the docket to the actual decree from the court." (quotation marks omitted)); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 (1956) (explaining, with regard to the federal final judgment rule, that a trial court may not "treat as 'final' that which is not"). Here, the court's order left patently unresolved Counts 5 and 6 of Brown's amended complaint and each of Morse's counterclaims,[3] so it did

---

[2] Brown concedes that although he may have intended for the court to dismiss all of his claims, the court did not, in fact, dismiss Counts 5 and 6.

[3] The court stated that Morse's counterclaims were "moot." But claims cannot simply go away; they must be finally resolved by entry of a judgment. Also, the court did not explicitly address Count 7 of the amended complaint, although arguably the declaratory relief granted to Brown in the court's partial summary judgment order effectively resolved Brown's additional request for declaratory relief in Count 7. On remand, the court should expressly resolve Morse's counterclaims along with Counts 5, 6, and 7 of Brown's amended complaint. Finally, although "specific findings of fact and conclusions of law are not necessary on a motion for summary judgment," our appellate review is aided greatly by orders that explain "the legal basis on which the judgment is based." 3 Harvey & Merritt, *Maine Civil Practice* § 56:12 (3d ed.), Westlaw (database updated Sep. 2025).

8

not constitute a final judgment. *See, e.g.*, *O'Connor*, 2008 ME 114, ¶¶ 2-3, 951 A.2d 78.

[¶14] Because the court's order was not a final judgment, it is reviewable only if it fits within one of the limited exceptions to the final judgment rule. *See Xamplas*, 2025 ME 92, ¶¶ 16-17, 347 A.3d 1000. "A party urging that we reach the merits of an otherwise interlocutory appeal has the burden of demonstrating to us that an exception to the final judgment rule justifies our reaching the merits of the appeal." *Maples v. Compass Harbor Vill. Condo. Ass'n*, 2022 ME 26, ¶ 16, 273 A.3d 358 (alterations and quotation marks omitted). In this case, Brown urges us to apply the death knell or the collateral order exception, while Morse urges us to apply the judicial economy exception. We address the parties' arguments in turn.

[¶15] "For either the death knell or the collateral order exception to be applicable, a party must suffer an irreparable loss of rights absent immediate review."[4] *Hearts with Haiti, Inc. v. Kendrick*, 2019 ME 26, ¶ 17, 202 A.3d 1189. A loss of rights is irreparable only if "the appellant would not have an effective

---

[4] For the collateral order exception to apply, it must also be the case that "the decision is a final determination of a claim separable from the gravamen of the litigation" and that "it presents a major unsettled question of law." *Xamplas*, 2025 ME 92, ¶ 18, 347 A.3d 1000 (quotation marks omitted). For the death knell exception to apply, the rights at stake must be "substantial." *Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶ 14, 974 A.2d 918 (quotation marks omitted). Because we conclude that there is no risk of irreparable harm in this case, we do not discuss these additional requirements.

remedy if the interlocutory determination were to be vacated after a final disposition of the entire litigation." *Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶ 14, 974 A.2d 918 (quotation marks omitted). In other words, a party seeking review under these exceptions must show a loss of rights that cannot possibly be remedied by subsequent litigation in the trial court or by an appeal from the final judgment. *See, e.g.*, *Harris Mgmt., Inc. v. Coulombe*, 2016 ME 166, ¶ 11 n.3, 151 A.3d 7; *Xamplas*, 2025 ME 92, ¶¶ 18, 22, 347 A.3d 1000.

[¶16] Brown has not carried his burden to show that dismissing this appeal will cause an irreparable loss of rights. He argues that, absent our immediate review, the "wrong" party could end up serving as trustee for the duration of these proceedings. But he does not explain why that possibility would lead to an irreparable loss of either his or Morse's rights, and we see no reason to believe that it would.

[¶17] There is no affirmative right to serve as a trustee. A trust creates a "right in a beneficiary" but only a "duty in a trustee." *Cutter v. Burroughs*, 100 Me. 379, 387, 61 A. 767, 770 (1905) (quoting 2 John Norton Pomeroy, *Equity Jurisprudence* § 835 (3d ed. 1905)); *see, e.g.*, *Caputo v. Moulton*, 204 N.E.3d 1009, 1016 (Mass. App. Ct. 2023) ("Appointment as a trustee is neither an entitlement nor an expectancy, but rather a bundle of responsibilities and duties running to

the beneficiaries with respect to the trust res."); *cf.* 18-B M.R.S. §§ 801-817 (2026) (describing the "duties and powers" of trustees).

[¶18] Moreover, the temporary service of an improper trustee would not irreparably harm the rights of either party as a *beneficiary* of the trust. Any acting trustee must administer the trust in accordance with the trust instrument and the Maine Uniform Trust Code. *See, e.g.*, 18-B M.R.S. § 801 (providing that a trustee owes the beneficiaries a duty to "administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries and in accordance with [the Trust] Code"); Amy Morris Hess et al., *Bogert's The Law of Trusts and Trustees* § 861 (2025 ed.), Westlaw (database updated May 2025) (describing the right of a beneficiary as "the right that the trustee shall perform the trust in accordance with the directions of the trust instrument and the rules of equity"). If a trustee deviates from those obligations, the rights of the beneficiaries will be adequately protected by the remedies available under the Trust Code. *See* 18-B M.R.S. § 1001(2)(A)-(J) (2026) (authorizing a range of remedies for a breach of trust, including the imposition of damages, the restoration of property, and under certain circumstances, the voiding of actions taken by the trustee). In other words, even if a trustee mismanages the trust during the pendency of these

proceedings, any harm to the beneficiaries will be fully reparable. *Cf. Dairyland Ins. Co. v. Christensen*, 1999 ME 160, ¶ 10, 740 A.2d 43 ("[T]he fact that the appellants may incur some delay in resolution of the issue and some cost in pursuing the remainder of the litigation, does not amount to such an irreparable loss as would justify immediate review of the interlocutory order . . . .").

[¶19]   Because Brown has not demonstrated that dismissing this interlocutory appeal will cause either party to suffer an irreparable loss of rights, neither the death knell nor the collateral order exception justify our immediate review. *See, e.g.*, *Hearts with Haiti*, 2019 ME 26, ¶ 17, 202 A.3d 1189.

[¶20] The judicial economy exception, urged by Morse, "permits an interlocutory appeal when (1) review of a non-final order can establish a final, or practically final, disposition of the entire litigation, and (2) the interests of justice require that immediate review be undertaken." *Maples*, 2022 ME 26, ¶ 17, 273 A.3d 358 (quotation marks omitted). We are doubtful that the second requirement is met in this case, but we are certain that the first is not. Brown suggested at oral argument that he might opt to pursue Counts 5 and 6 rather than to voluntarily dismiss them. At the very least, the parties continue to dispute whether any remaining claims should be dismissed with or without

prejudice. Accordingly, our resolution of this appeal could not possibly "establish a final, or practically final, disposition of the entire litigation," and our immediate review would do no more than condone the parties' efforts to engage in "piecemeal litigation." *Id.* ¶¶ 15-17 (quotation marks omitted).

[¶21] In sum, the trial court resolved neither Counts 5 and 6 of Brown's amended complaint nor Morse's counterclaims, and the parties have not established the applicability of any exception to the final judgment rule. Accordingly, we dismiss Morse's appeal as interlocutory.[5]

The entry is:

> Appeal dismissed. Motion for sanctions denied.

Susan C. Thiem, Esq. (orally), Law Office of Susan C. Thiem, Lincolnville, for appellant Diahanne L. Morse

Jesse Bifulco, Esq. (orally), Penbay Estate Planning Law Center, Camden, for appellee Mitchell D. Brown

Waldo County Superior Court docket number CV-2021-1
FOR CLERK REFERENCE ONLY

---

[5] We also deny Brown's requests for sanctions under M.R. App. 13(f) and M.R. Civ. P 11(a)(6). First, although we take no position on the merits of Morse's appeal, our cursory review of her arguments does not lead us to believe that they are "frivolous, contumacious, or instituted primarily for the purpose of delay." M.R. App. 13(f); *see, e.g.*, *Beckerman v. Conant*, 2024 ME 36, ¶ 15 n.3, 315 A.3d 689. Second, Brown's request for sanctions under M.R. Civ. P. 11 is largely duplicative of his request for sanctions in the trial court, and, at least on this record, we see no reason to reconsider the court's denial of that motion. *See, e.g.*, *Dubois v. Town of Arundel*, 2019 ME 21, ¶ 12, 202 A.3d 524.